IN THE MATTER OF THE APPOINTMENT OF A RECEIVER OF THE LATE DODGE AND STEVENSON MANUFACTURING COMPANY. etc.

To exclude a judge from sitting in a cause by reason of kinship, under the provision of the Revised Statutes (2 R. S., 275, § 2), prohibiting him from sitting in any cause, "in which he is interested, or in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties," such kinship must exist between him and some person who is actually a party; it is not enough that he is related to some person not a party who is, or may be interested in the cause.

The fact, therefore, that a stockholder in a corporation, which is a party, is a relative of a judge within the prohibited degree, does not disqualify the judge from sitting; as the stockholder, although interested, is not a party.

Consanguinity was not a disqualification at common law; the disability rests wholly upon the statute, and cannot be extended beyond its terms.

It seems, that where a judge is interested in any matter brought before him, it will be deemed a "cause" within the intent of the provision of said statute, disqualifying him because of interest.

But the provision disqualifying, because of kinship, is only applicable to a case where there are parties adverse to each other, or where some question is to be determined between two or more parties.

Upon petitions of the trustees and creditors of the D. and S. M. Co., a manufacturing corporation, organized in Cayuga county, an order was granted ex parte, appointing a receiver of said company, in pursuance of the provisions of the acts relating to such corporations in Herkimer and Cayuga (§ 3, chap. 361, Laws of 1852, made applicable to Cayuga county

by chap. 179, Laws of 1853), and on motion of the receiver an order was granted by the same judge, directing an assessment upon the stockholders. These orders were set aside, upon the ground that the judge who granted them was related by marriage within the ninth degree to several of the stockholders of the company. *Held*, error; that the stockholders were not parties to the proceedings.

*In re D. and S. M. Co.* (14 Hun, 440), reversed.

*Place* v. *The B. M. Co.* (28 Barb., 503), stated to have been reversed.

*Wash. Ins. Co.* v. *Price*, (1 Hopk., 1); *Foote* v. *Morgan* (1 Hill, 654), questioned.

*Baldwin* v. *McArthur* (17 Barb., 415); *Rivenburgh* v. *Henness* (4 Lans., 208), distinguished.

(Argued January 21, 1879; decided April 22, 1879.)

APPEAL from order of General Term of the Supreme Court, in the fourth judicial department, reversing an order of Special Term, which denied a motion on the part of certain stockholders of said Dodge and Stevenson Manufacturing Company, to set aside certain Special Term orders, and granting the motion. (Reported below, 14 Hun, 440.)

The nature of the orders and the facts appear sufficiently in the opinion.

*W. F. Cogswell*, for appellant. The affinity of the judge to one of the stockholders of the corporation did not disqualify him from sitting in the case. (*Bank of Lansingburgh* v. *McKee*, 7 How., 360; 26 id., 601; *Jewett* v. *Albany City Bank*, Clark Ch. R., 191; *People* v. *Cline*, 23 Barb., 197; *In re Hooper*, 5 Paige, 409.)

*E. Countryman*, for respondents. The orders of Judge DWIGHT were void by reason of his affinity to several of the stockholders. (2 R. S., 275 [m. p.], § 2; 1 Coke Litt., 157*a* § 234; Graham Pr. [2d ed.], 304; 3 Wait's Practice, 105; 2 Graham & Wat. on New Trials, 228, note 1; *Post* v. *Black*, 5 Den., 67; *Paddock* v. *Wells*, 2 Barb. Ch., 331; *People* v. *Thompson*, 41 N. Y., 1, 5; *Chambers* v. *Clearwater*, 1 Abb. Ct. of Ap., 341–346; *Moses* v. *Julian*, 45, N. H., 52–54; *Stearns* v. *Wright*, 51 id., 600, 608; *Heydenbelt* v. *Towns*,

etc., 27 Ala., 424 ; *People* v. *De la Guerra*, 24 Cal., 73 ;
*Fort* v. *Stiles*, 57 N. Y., 399, 408 ; *Durres* v. *Grand Junc.
Canal*, 3 H. of Lords Cases, 759 ; *Converse* v. *McArthur*,
17 Barb., 410–412 ; *Barton* v. *Port Jackson*, 17 id., 397–
404; *Henny* v. *Salina Bank*, 1 N. Y., 83, 86, 87 ; *Bell* v.
*Quin*, 2 Sandf. Sup. Ct. R., 153 ; *Hallett* v. *Novion*, 14
Johns., 272, 290 ; *Pennington* v. *Townsend*, 7 Wend., 276,
280 ; Sedgwick on Stat. and Com. Law, 38, 40, 84, 396 ;
3 Rev. St. [6th ed.], 983, § 102 ; *People* v. *Bogart*, 3 Abb.,
193 ; 3 Park Cr. R., 143 ; *Oakley* v. *Aspinwall*, 3 N. Y.,
547, 551 ; *Edwards* v. *Russell*, 21 Wend., 64; *Schoon-
maker* v. *Clearwater*, 41 Barb., 200–203–206 ; *Foot* v.
*Morgan*, 1 Hill, 655 ; *Birdsall* v. *Fuller*, 11 Hun, 204 ;
*Rivenburgh* v. *Henness*, 4 Lans., 208 ; *Baldwin* v. *McArthur*,
17 Barb., 414 ; *Jewett* v. *Albany City Bank*, Clark Ch. R.,
170 ; *N. Y. and N. H. R. Co.* v. *Schuyler*, 28 How., 187 ;
reviser's notes, 3 Rev. St., [2d ed.], 694 ; *Say* v. *Minot*, 3
Cush., 352 ; *Sigourney* v. *Libby*, 21 Pick., 101 ; 22 id.,
507 ; *Bacon, appellant*, 7 Gray, 391 ; *Stearns* v. *Wright*,
51 N. Y., 600 ; *Hawley* v. *Baldwin*, 19 Conn., 584 ; *English*
v. *Smith*, 13 Conn., 221 ; *Sturges* v. *Peck*, 12 Conn., 139 ;
*Bellows* v. *Pearson*, 19 John., 172.)

RAPALLO, J.  By an order of the Supreme Court at a
Special Term held by the Hon. C. C. DWIGHT, one of the
justices of that court, on the 15th of June, 1876, Martin S.
Cuykendall was appointed receiver of all the property and
rights in action of the Dodge and Stevenson Manufac-
turing Company, including any and all liability of stock-
holders for unpaid stock, or for the debts of said corporation.
On motion of the receiver so appointed, a further order was
made at a Special Term held by the same judge on the 21st
of July, 1876, directing an assessment upon the stockholders
of the company liable for the debts thereof, of seventy-five
per cent of the amount of stock held by them respectively,
and that the receiver collect the same and bring actions, etc.

In pursuance of these orders the receiver made the assess-

ment authorized, and brought actions against various stockholders whom he alleged to be liable upon their stock, for the recovery of the sums assessed upon them respectively.

After the trial of one of those actions, the motion which has given rise to the present appeal was made, on behalf of various stockholders of the company. The motion was to remove Martin S. Cuykendall from his receivership and to appoint a new receiver and to set aside the order of the 21st of July, 1876, which directed an assessment upon the stockholders, or to modify said order and reduce the assessment to a smaller per centum, and for general relief.

One of the grounds of this motion, and the only one necessary to be considered on this appeal, was that the said orders were improperly granted by a justice of the Supreme Court who was of kin by blood or marriage, within the ninth degree, to one or more of the stockholders of said company, and therefore his orders were illegal and void.

· The motion was heard at Special Term before Judge RUMSEY, who made an order refusing to grant the motion on the ground stated, but accepting the resignation of Mr. Cuykendall as receiver, to take effect when another receiver should be appointed, and referring it to a referee to select a new receiver, and also to ascertain and report whether the assessment was larger than necessary, and what proportion thereof should be remitted.

From this order an appeal was taken to the General Term, who reversed it, and vacated and set aside the order appointing the receiver, and the order directing the assessment, and the assessment made in pursuance thereof. This order of the General Term, as amended by stipulation, contains a statement that it is made upon the ground that Mr. Justice DWIGHT, was related by marriage, within the ninth degree, to several of the stockholders of the late Dodge and Stevenson Manufacturing Company, and so disqualified from sitting at the hearing of the applications resulting in the orders of the 15th of June, and the 21st of July, 1876.

This decision was based upon the statute (2 R. S., 275,

§ 2), which declares, that " no judge can sit as such in any cause to which he is a party, or in which he is interested, or in which he would be excluded from being a juror, by reason of consanguinity or affinity to either of the parties." The question now before us consequently is, whether the case falls within the prohibition of this statute. If it should be found to be within the statute, the further question would remain, whether the orders are merely voidable, or whether they are absolutely void, so that all proceedings had under them are also void, and the actions brought by the receiver must fail for that reason.

To bring this case within the statute it is necessary to establish that the orders were made *in a cause*, and that the persons to whom Judge DWIGHT is related were *parties* to that cause. Both of these points are contested by the appellant. In considering them we will first examine the case of the order appointing a receiver.

That order was not made in any action, but upon an application to the court pursuant to a special statute. The Dodge and Stephenson Manufacturing Company was a corporation organized in Cayuga county under the general manufacturing law. By an act passed in 1852 (chapter 361 of the Laws of 1852) in relation to manufacturing corporations in Herkimer county, (and afterwards by chapter 179 of the Laws of 1853 made applicable to like corporations in the county of Cayuga,) it is provided (section 1) that whenever the trustees of any such company shall become satisfied that its assets are insufficient to pay its debts, and that its business cannot be carried on without loss, they may by resolution so declare, and thereupon the corporation shall become dissolved and all its property and rights in action, including any liability of the stockholders for unpaid stock, or for the debts of the corporation, shall thenceforth be deemed the property of the creditors, to the extent of their debts, in equal ratio, according to their debts respectively. By section 3, it is declared that the trustees then in office shall become trustees for the creditors to the extent of the debts, and for the

stockholders for any surplus, and they are required to close the business, dispose of the property, collect the debts due to the corporation and pay those owing by it; to assess deficiencies, if necessary, upon the stockholders, to the extent of their liability, or distribute any surplus among them. These trustees are also declared to be subject, as such trustees, to the control and direction of the Supreme Court, upon their own application, or that of any creditor, and removable by the same court, which is authorized to appoint a receiver in their place upon proper cause shown.

In pursuance of this act the trustees of the company in office on the 31st of August, 1874, passed the resolutions required to dissolve the corporation, and thus became trustees of its property and rights in action under the act, and afterwards proceeded to wind up its affairs.

In May, 1876, they presented a petition to the Supreme Court setting forth their proceedings as trustees, together with their accounts, and praying that their accounts might be passed, settled and allowed, and that they might be removed and discharged from their trust, and that a receiver might be appointed in their place.

This proceeding appears to have been wholly *ex parte*, and it is stated in the papers on which the present motion was made, that no notice of the application of the trustees was given to any of the stockholders.

This is the application which was heard by Judge DWIGHT and which is alleged to be the *cause* in which he was disqualified from sitting, by reason of his relationship to some of the stockholders. It is true that at the same time a petition, on behalf of some creditors of the company, for the appointment of a receiver and an accounting by the trustees, was presented to the court, but this petition seems to have been in aid of that of the trustees, the same counsel appearing for all the petitioners, and no notice having been given to any adverse party.

It is contended by the appellant that this *ex parte* application was not a *cause*. We are not inclined to give that

term a narrow construction in cases which are within the spirit of the statute now in question, but rather to hold that when a judge is interested in any matter brought before him it should be deemed a cause within the intent of that portion of the statute which disqualifies him from sitting by reason of his interest. But it is difficult to apply to such a proceeding the further provision, which declares him incompetent to sit in any cause in which he would be excluded from being a juror by reason of consanguinity or affinity *to either of the parties.* This language does not seem appropriate to such a case as the present, but rather to a case where there are parties adverse to each other, or at least where some question is to be determined between two or more parties. But passing this question it is very certain that to exclude a judge from sitting in any cause by reason of kinship, such kinship must exist between him and some person who is actually a party to the cause. It is not enough that he is related to some person, not a party, who is or may be interested in it, or affected by his order. Interest on the part of the judge, disqualifies him from sitting, but interest on the part of a relative of the judge does not. The statute very clearly expresses that such relative must be one of the *parties* to the cause, to render the judge incompetent. The case of an action by or against a corporation is an apt illustration. If the judge is a stock-holder of the corporation he cannot sit, because he is interested. That was the case in *Dimes* v. *Grand Junction Canal* (3 House of Lords Cases, 759). But the fact of a relative of a judge within the prohibited degree being a stockholder of the corporation, does not disqualify the judge, because such stockholder, though interested, is not a party. In *Place* v. *The Butternuts Manufacturing Company* (28 Barb., 503), a judgment of a justice of the peace against a corporation, affirmed by the county court, was reversed by the Supreme Court on the ground that a brother of the justice was a stockholder of the company defendant; but the judgment of the Supreme Court was in turn

reversed by the Court of Appeals in December, 1863, and the judgment of the county court was affirmed. The case is not reported, but the decision is among the list of decisions in 26 How. Pr. Rep., 601, and is referred to in Moak's edition of Clark's Chancery Rep., (note, page 191,) and the cause of its not being reported is there explained. The same point was adjudged in *Bank of Lansingburgh* v. *McKie* (7 How., 360). I do not understand it to be now claimed that relationship to a person interested in the event of a cause disqualifies a judge from sitting, if such relative is not a party. The only question on which there was any conflict of authority was whether a stockholder is a party to an action against the corporation. Chancellor KENT, after conference with Chief Justice SPENCER, held in *Stuart* v. *Mech. and Farmers' Bank*, (19 J. R., 501,) that he was not, while Chancellor SANDFORD held in *Wash. Ins. Co.* v. *Price*, (1 Hopkins, 1) that he was. This decision probably resulted from a feeling of delicacy on the part of the chancellor, who was called upon to hear a cause against a corporation in which he was himself a stockholder. The statute then provided that where the chancellor should be a party to a suit in chancery, the bill should be filed before the chief justice of the State who should proceed in the cause as chancellor. Chancellor KENT had previously (19 J. R., 501), held that he was bound to hear a similar cause on the ground that he was not a party, but Chancellor SANDFORD declined to follow his decision. This difference was afterwards settled by the provisions embodied in 2 Revised Statutes, p. 169, section 7 and p. 178, section 64 which furnish a substitute for the action of the chancellor in cases where he is either a party, *or interested*. And the question whether a stockholder is a party to a cause in which the corporation is a party was settled by this court in *Place* v. *Butternuts Manuf. Co.*, before referred to. Judgments and proceedings of our courts against corporations would stand upon a very precarious foundation in these days, if they could be overturned on discovering that some judge who took part in

them was related within the ninth degree by blood or marriage, to some stockholder of the corporation.   If such were the law it would be extremely difficult for most of our judges to know whether they were competent to sit, in cases in which some of our large corporations are parties.

In the proceeding now under review, viz., the application of the trustees to have their accounts passed, and for the appointment of a receiver in their place, it is not in my judgment possible to say that the stockholders of the company were parties.   The statute did not require them to be brought into court, and they were not in fact brought into court in any manner, nor were they named in the proceeding.   The trustees were the only parties appearing before the court, unless it be the creditors who presented their auxiliary petition.   The trustees invoked the action of the court in pursuance of the act of 1852, chapter 361, section 3, before referred to, which declared them to be subject to the control and direction of the Supreme Court, on their own application or that of any creditor, and empowered that court to appoint a receiver in their place on proper cause shown.   The law did not require that the stockholders be parties to the proceeding.   It is true, the stockholders had an interest in the matter, by reason of the possibility of a surplus, and also because the receiver to be appointed would have the power to assess and sue them if they were liable on their stock, but as has already been shown, interest on the part of a relative of the judge does not disqualify him from sitting ; the relative must be actually a party to the cause. It would be almost impossible to carry on the administration of justice under any different rule.   The judge may be presumed to know whether he is himself interested in a cause brought before him, and he can ascertain from the papers, who are the parties to it, and presumably may know whether any of them are related to him by blood or marriage within the ninth degree ; but how can he possibly know what persons, not named, may be interested in the subject, or whether any such persons are related to him.   The law is

not so unreasonable as to make the validity of his action depend upon such a question. It carefully guards not only against actual abuses, but even against the appearance of evil, from which doubt can justly be cast upon the impartiality of judges, or respect for their decisions may be impaired; but enactments intended for this purpose should not be extended beyond their letter and spirit, so as to be perverted into snares for litigants, and to cast uncertainty upon all rights acquired under judicial proceedings. If the decision which we are called upon to review here is sound, there can hardly be a title acquired under a receiver of a dissolved or insolvent corporation, which cannot be over-thrown by showing that among the stockholders, unnamed in the proceedings, was some distant relative of the judge who appointed the receiver, or under whose orders the receiver has acted. The consequences which would flow from such a doctrine are too obvious to need illustration, and too serious to render the doctrine tolerable.

We think it clear that the stockholders who were related to Judge DWIGHT were not parties to the proceeding in which the receiver was appointed and that his order therein was valid and effectual.

The validity of the assessment is equally evident. In the first place no order was necessary to authorize the receiver to assess. The act confers directly upon the trustees power to assess deficiencies, if necessary, upon the stockholders, to the extent of their liability, and it requires no previous application to the court. The trustees are subject to the control and direction of the court, and they are authorized to apply to it for instructions, but they are not required to obtain its leave to do the numerous acts which they are empowered by the statute to perform. The receiver succeeded to the powers of the trustees, and although out of abundant caution he applied for directions to make the assessment, yet even if he failed to obtain a valid order for that purpose, he was not thereby deprived of the power to assess, vested in him by the statute, so long as no valid order was made

restraining him from the exercise of that power. But we do not rest our decision upon that ground alone. The order for the assessment was an *ex parte* order made on the petition of the receiver for directions, and the moving papers in this case state that no notice of this application was given to any stockholder. It is difficult to see how on such an application any person other than the receiver can be deemed a party within the statute. There would be equal reason for holding that on an *ex parte* application of a receiver to the court for directions as to bringing actions to collect the debts due to an insolvent corporation, the debtors were parties and that if the judge happened to be related to any debtor to the corporation though not even named in the proceeding his order was void.·

I have examined every case cited on the brief of the learned counsel for the respondent bearing upon the question and have not found one which holds that the relationship of the judge to a person not an actual party to the proceedings, though interested therein, is a ground of disqualification of the judge, unless *Foot* v. *Morgan* (1 Hill, 654), should be regarded as sustaining that view. All but two of the cases cited were regular actions in which the judge was related to a party plaintiff or defendant. Those two are *Baldwin* v. *McArthur* (17 Barb., 415), and *Rivenburgh* v. *Henness* (4 Lans., 208). In the first, which was a proceeding in a case of pauperism, the overseer making the application was a member, and a necessary constituent part, of the court to which it was made, he was therefore both party and judge ; and in the second, a bastardy case, the complainant (likewise an overseer) was a relative of the magistrate before whom the proceedings were instituted. He was clearly a party on the record. In *Foot* v. *Morgan* (1 Hill, 654), referred to above Morgan had prosecuted an action for his own benefit in the name of a merely nominal plaintiff, before a justice of the peace to whom he was related and had obtained judgment thereon against Foot. He afterwards moved to set off that judgment against a

judgment which Foot had obtained against him in the Supreme Court, and it was held that the statute applied to such a case and rendered the justice's judgment void. That is the only case cited in support of the proposition that relationship to any person other than a party to the record disqualifies the judge. But it is very far from controlling the present case. It was mainly upon the authority of that case that the decision of the Supreme Court in *Place* v. *Butternuts Manufacturing Company* (28 Barb., 503), rested.

It is worthy of observation that at common law judges were not subject to the same disqualifications as jurors, and there are at the present time many grounds of challenge to a juror which are not applicable to judges. At common law the only ground upon which a judge could be excluded from acting was interest in the cause. This disability was founded upon the maxim that no man can be judge in his own cause. Consanguinity to either of the parties, though good cause of challenge to a juror, did not disqualify a judge, for favor would not be presumed in a judge. (*Brooke and the Earl of Rivers*, Hardres' Rep., 503 ; Bouv. Law Dict., title, Incompetency.) Although judges have voluntarily withdrawn from the bench by reason of consanguinity to parties (3 Cow., 724) and the judgments of inferior magistrates have been closely scrutinized where the relationship was near, it was not held in this State, before the statute, that such relationship rendered those judgments void. (*Eggleston* v. *Smiley*, 17 J. R., 133; *Pierce* v. *Sheldon*, 13 id., 191.)

The absolute disability within the prescribed degrees depends wholly upon the statute, and consequently cannot be extended beyond its terms. (12 Conn., 88.)

No doubt many cases may be supposed in which the interest of a relative of the judge in a controversy to which he is not a party, would fall within the mischiefs intended to be guarded against by the statute. But it has been found necessary for obvious reasons to place limits upon the absolute disqualifications imposed upon judges. The question which

we now have to determine is not what circumstances would render it improper or indecorous for a judge to sit, but in what cases is he legally disqualified, so as to invalidate his judicial acts.  All others must necessarily be left to the sense of propriety of the judge himself, and as a general rule that is a quite sufficient protection.  In the present case there was nothing to indicate the slighest impropriety in the judge sitting.  In so far as his action affected the interests of the stockholders, it was adverse to them, and it did not appear until after he had acted that he was related to any of them.  The objection to his sitting, even if they had been actually parties, would have been of the most technical character, supported only by positive law, and not by any considerations of propriety or justice.

Having come to the conclusion that Judge DWIGHT was not disqualified from making the order in question, it is unnecessary to consider what the consequences would have been had we arrived at a different result.

The order of the General Term should be reversed, and that of the Special Term affirmed, with costs.

All concur, except DANFORTH, J., who was of counsel and took no part.

Ordered accordingly.